Yes, good morning, your honors. Good morning. Can you hear me? Yes. Yes, okay. Subsequent to the filing of the briefs in this matter, this court has handed down the decision in the Alovsky case, which I think focuses and narrows the argument in this case to two essential points. One is the ultimate premise of the district court's opinion in this case, which is contained on page 151 of the record, was the point at which Judge Robinson summarized that all of the evidence in the various related cases was gathered from Mr. Thielemann, that Mr. Thielemann is a predator, that he initiated most of the contact in the conversations in this matter, and that the primary concern was to make all of the sentences in all of these various cases consistent. The other point is there was one psychiatric evaluation in this case, which was the opinion that was filed by Dr. Rogers, which is in the record on pages 118 to 121. The basis, the ultimate conclusion of Dr. Rogers' study was that the focus of Mr. Thielemann's interest is on heterosexual men. The mere exposure to sexual images of children will not change one's sexual interests unless that individual has had that interest all along. Counsel, if I could ask where you're headed with this. We have asked for ten minutes of argument on both of these cases. Our interest, I think, is primarily on the conditions of supervised release. And I think just for your benefit, at least that's my interest, and one reason I think we gave a limited argument is to address those issues. If you would direct yourself to that. I just don't want you to get eight minutes in and then... I think on the issue of the conditions of release, I think that has already been treated by this course in related cases. Well, we've got some specifics here that aren't necessarily the same. Well I think the one thing that is clear that is amiss in the district court opinion in this case is the restriction on the ultimately released access to any matters involving any kind of sexual material. Any kind of what? Any kind of sexual material. I think that is the one part of the conditions that is clearly overly broad and should be stricken. I would like to hear you. I don't want to stop you from addressing that. But I would like to hear you on the restriction on computer use. Well, it has been my feeling, and I argued in the brief in this matter, Your Honor, that with the growing use of computers, I think any restriction on the use of a computer today and certainly at the point whenever it is that Mr. Teelman is released, I mean good heavens we're at the point now where virtually everything we do is done on and via the computer. Not everything. Not everything. Well it's getting close to it. Mr. Teilman is how old or how old was he at the time of sentencing? Mr. Teilman, I believe, is 26 years old, Your Honor. What kind of a job did he have? He was working at a hardware store. I believe it was at a Lowe's store. And he had a history of working in retail stores. That's right. That's been his whole career. And this restriction prevents him from using a personal computer, right? Yes. Without the approval of the probation officer. That is correct. It is to be supervised by the probation officer. I don't know of any impact it would have on his employment as a retail salesman. Do you, sir? They don't have personal computers in Target stores or what's the name of the other ones? I don't know. Costco. There's Target, Costco, Lowe's, Kohl's. They don't have personal computers there. What they have are computers that are attached to the register. And when you give them a dollar and a half and they're supposed to give you a change of 15 cents, the computer registers it. Well, Your Honor, that may have been true last year, the year before, ten years ago. I know last weekend when my son-in-law visited my wife and I, and my wife and I are in our early 70s, when he left, we were the proud owners of BlackBerrys. And I'm now learning that wherever I am, I can receive and transmit e-mails. I think what you're going to find rapidly, if it is not already the case, is that people, even people working in stores like Lowe's and Kohl's and so forth, are going to have these BlackBerrys. I mean, we're tied to it now. Well, that's a personal... I'm sorry. I was going to say, when that occurs, he can go to the probation officer. The difficulty with his offense here is that the restriction that we've imposed in other cases where you cannot go on certain pornographic sites, et cetera, et cetera, would not work with him because that's not what he did. He solicited and conducted the offense over the internet so that we are troubled by his having a personal computer. And while his liberty cannot be deprived more than necessary, what's wrong with depriving him of the liberty if it's not something that is absolutely necessary for everyday life? Well, as I said, Your Honor, I think the one part... And it's also not lifetime. It's what? Ten years is his supervisory? Ten years. Yeah. Ten years his supervisory. He's going to be 36. Right. Yeah. The only point on the conditions of release that I think is still of significance is the imposition of any condition that would bar access to any kind of sexual materials regardless of whether or not they involve juveniles or not. And I think this Court has made clear that that condition is overly broad, that that is excessive. Right. So in Loy, we ruled that something like that is not... That's right. And that's the only thing that I would raise with respect to the conditions here. Tell me that again as to the restriction that you think is a part or is illegal. Well, I personally am troubled with any kind of restriction on the use of computers, period, because I... Does it make any difference what kind, personal, anything else? Yes. But the point I'm making is that in terms of this case and this argument, the only condition I think that is really clearly excessive under this Court's precedence, which I'm not arguing with, is a prohibition on access to sexual materials of any kind. Right. The condition is the defendant shall not possess or view any materials including picture photographs, books, writings, drawings, or video games depicting and or describing sexually explicit conduct described in 18 United States Code, Section 2256-2. Yes. And I believe that has been found to be overly broad. I think in Loy, we did pretty much... Yeah. You've pretty much dealt with that. Let me get back to the one point, if I might, Judge Wendell, that I was starting on. And that is that throughout this litigation, and it is the crux of Judge Robinson's opinion, there was the statement and there was the belief and proposition that Mr. Teelman was somehow like the organizer and the kingpin and the linchpin of this whole thing. All of this came out of materials in a chat room, an internet chat room. An internet chat room is not run by anybody who is involved in that chat room. These chat rooms are computer floating crap games. Anybody can get in there, anybody can get out anytime they want by logging in and logging out. But isn't the problem here, sir, that the stipulation in the plea agreement was that he engaged in a specific incident on a chat room that involved the molestation of an eight-year-old girl? There was one incident where the gentleman on the other end of that particular conversation in that chat room was exposing himself to his minor child. That's Mr. Phillips. Yes, Mr. Phillips. I had that on six weeks ago. What Judge Robinson emphasized was that all of the evidence in all of these cases came from Mr. Teelman. It didn't all come from him. We have no idea in all this material that was floating back and forth in this chat room who originally put those images on there, who was logged in at a given time, who was logged out. We have no idea. This wasn't some massive thing run by Mr. Teelman. He was one of a number of people who would occasionally log in and log out. But he was a common element in all of them. He was a common element. But here is a young man with a history of severe and substantial abuse as a child. Well, before you sit down, there were three – how many restrictions did he have? Did he have a restriction against dealing with children? Or just the – No, I don't think there is, as a matter of fact, any restriction on that. He must have the computer and the explicit sexual material. Yes. Yes. Yes. Yes. Did you reserve time for rebuttal? Did you reserve rebuttal time at all? No, I – no, I did not. And you would – your argument to us is that we should not sustain either of those two restrictions. Is that so? Well, yes. I would make that argument. But that is not my main concern. My main concern, Your Honor, is the simple proposition under Velosky, that here – this is the only case that I know of in the country, I know of no other reported decision, where a young man involved in one of these cases comes before the court where the undisputed child. He has no interest in children. He has interest only in adult men who have that interest in children. Judge Robinson never – Sorry. Your argument is it makes a difference. Never, never treated this extraordinary and, so far as I can tell, absolutely unique condition. Counsel will take that under advisement. All right. Thank you very much. Okay. I appreciate your argument and ask for Mr. Falgowski. May it please the Court, my name is Edmund Falgowski. I'm an assistant United States attorney from the District of Delaware. I represent the appellee of the United States of America. The United States admits that the two conditions in question, the two conditions of supervisory release, both assist and protect the public, but also assist the defendant in assuring that he not re-offend, that they assist in his rehabilitation. The condition on computers, the restriction on computers is limited to internet-connected personal computers, and even that restriction is limited in that the defendant can have such access with the condition of his – with the approval of his probation officer. What's a personal computer? A personal computer would be – You're speaking now to the head of the IT Committee of the Judicial Conference, so be careful. Your Honor, my understanding of what a personal computer would be considered would be a computer that's not – certainly not one in a car, not one on a cash register. What about the Kindle electronic book reader? Is that a computer – is that a personal computer? Or the Sony electronic book reader where you can download things by the internet, is that a personal computer? I would expect that would be considered among the umbrella of personal computers. I would expect that would be so also. And – It's a really personal computer. Anything with internet access. With internet access. And I believe that this Court in its decision in Crandon indicated that where a person is a danger to the community, where they use the computer as a predator, that this Court – that it's appropriate for the District Court to take that step to protect the public and also to assure that the defendant does not reoffend. Do you want to just address for a moment your friend's argument that he's not interested in children, only in adult males? And I've read everything that has been submitted to us, and that came as rather astounding to me. When the rest of the defendants said he had no interest in juveniles, he also said – he made lots of – he just lied to the investigators and said that he found all this appalling. We know that the defendant trafficked in child porn, and whether he did it for the purpose of being sexually excited by the men to whom he sent the child porn or whether he was excited by the children, he did it for his personal gratification, and he used child pornography as a currency. Now, whether that currency was because he has an interest in children or because he has an interest in men who have an interest in children, I think, may be a distinction without a difference. Do you not concede, though, that the restriction on the materials, even though it's tied to Title 18, we've said in Lloyd that that's just too vague and too broad, haven't we? Your Honor, I believe in Lloyd what the Court said was the word pornography, and Lloyd, the restriction was on pornography, and I believe in Lloyd the Court said that that is too restrictive because we don't know what pornography is. We don't know the definition of pornography doesn't reach into art, and my recollection is that in Lloyd, what this Court suggested in Lloyd was that the District Courts used the definition in statute, specifically 2256. Explicit. And that they used this explicit statute so that there's no confusion about what constitutes pornography and what does not. Were you involved in the Jonathan McKinney appeal? It's a related defendant. Another panel of this Court within the last month held that condition of supervised release should be stricken. Yes, Your Honor. I wrote a brief that was... It's the exact same language, right? It is, but the circumstances are different. Now, what... And this is the issue with this particular defendant. This particular defendant presents a problem that McKinney was not. This particular defendant has an arousal pattern. He has an interest, a sexual interest, which is kind of hard to define, hard to... It's unique at best. And the defendant says he does not have an interest in children, but he admits he has an interest in men, and he's aroused by men who have an interest in child pornography. And he says... And this just wasn't an isolated episode. There were eight different men that he, that the defendant seduced with child pornography. The defendant had 336 picture images of child pornography on his computer. And it's hard to get your arms around what exactly is his arousal pattern, as Judge Garth has asked me about. And so the risk is this. The risk is do we let this man, do we let this man look at adult pornography, which presumably is going to exercise his sexual libido, do we do that knowing that this man's history is that over a long period of time with many men, the defendant attempts to gratify that sexual interest in adult men with the currency, which is child pornography. And I believe what the district court did in this case in indicating that the defendant cannot have this sexually explicit conduct, is to guard against the possibility that the public has to be protected to ensure that this will not happen again, because this is a pervasive problem that this defendant had, and was not an isolated episode. And the other aspect of this is that the population at risk, if the defendant does, when we say population, which is at risk, are children. So if the district court judge permits the defendant to have access to sexually explicit material, this sexually explicit material arouses a pattern in the defendant to repeat this behavior. The population at risk, indeed, are children. That's a risk that I submit that the court reasonably did not take. And it is not clear error for the court to have acted, because there was no objection to this condition at sentencing. Now, I know that you're going to be speaking to us about the next case, the Kessling case, in which there was an additional condition that he be prohibited from dealing with children in his home or elsewhere. There were three conditions there. There are only two here. And yet, Mr. Thielman apparently encouraged all these people to molest children, according to what you're telling us. Am I right? That's correct. But the district court saw no need to prevent him from residing with children or in families that had children. No, Your Honor. The condition in this particular case, the court did order a condition, many conditions, including a condition on contact with children. However, the defendant did not appeal that condition. There may have been eight or ten special conditions to supervise, at least only two were appealed. And to answer Your Honor's question about McKinney, McKinney did not present this kind of a predator. McKinney's circumstances were that he was speaking with Thielman, he was one of eight people speaking to Thielman on the computer, and McKinney's problem, McKinney was analyzed and examined. He was a heroin addict. And he did not have this experience of actually going on to the, of using webcams in order to watch children be molested. Unlike the defendant, McKinney didn't weave, he didn't weave his, he didn't blur his lines between adults and children. He didn't weave child pornography into his attraction for adults. And so in that case, I submit that McKinney is just a different person and a less egregious offender than the defendant. If the court has no further questions.